UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RATNARAKSHIT WANKHEDE,

    Plaintiff,

v.

GOKEN AMERICA, LLC,

    Defendant.

Case No. 25-11518
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [12]**

---

Ratnarakshit Wankhede worked at Goken America, LLC, starting as a design engineer in 2021. But just two years after his promotion to project lead, Goken fired him. Wankhede is from India and maintains that his termination was motivated by his national origin. He also says that his firing was in retaliation for reporting discriminatory treatment to the company. So Wankhede, proceeding *pro se*, sued Goken alleging unlawful discrimination and retaliation under Title VII and wrongful termination violating Michigan public policy.

In response, Goken filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12.) The motion is fully and adequately briefed (ECF Nos. 12, 13, 14) and does not require further argument. *See* E.D. Mich. LR 7.1(f)(2). It will be GRANTED IN PART and DENIED IN PART as explained below.

**I.**

Because Goken seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court construes the second amended complaint in the light most favorable to Wankhede, including by assuming the truthfulness of his nonconclusory allegations and drawing all reasonable inferences in his favor. *See, e.g.*, *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020). And because Wankhede proceeds *pro se*, the Court reads his complaint "indulgently." *Ruiz v. Hofbauer*, 325 F. App'x 427, 429 (6th Cir. 2009); *see Heyward v. Cooper*, 88 F.4th 648, 653 (6th Cir. 2023) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam))). Though the Court's leniency is "not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). And "basic pleading requirements 'apply to self-represented and counseled plaintiffs alike.'" *Williams v. Hall*, No. 21-5540, 2022 WL 2966395, at *2 (6th Cir. July 27, 2022) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). Thus construed, Wankhede's second amended complaint, considering the allegations and attachments, presents the following narrative.

Wankhede began working at Goken as a Design Engineer in November 2021 and was promoted to Project Lead in November 2022. (ECF No. 10, PageID.258.)

In December 2023 Wankhede says he delivered feedback to team members for failing to meet "productivity expectations" on a certain project. (*Id.*) In turn, two of those team members, Beto and Jorge, shared feedback of their own to company

leadership, writing that Wankhede's "soft skills still need help" and that "[Wankhede] is polite in Teams but rude in person" among other criticisms of him as a manager. (*Id.* at PageID.278.) Wankhede says these were "false allegations against [him] intending to damage his professional reputation and employment." (*Id.* at PageID.258–259.)

Wankhede attended a mandatory leadership skills improvement session in February 2024. There, his supervisor, Zeyn Kermani,[1] told him, "Ratna, you should get rid of this Indian mentality where you think you can control the team by being rude and angry. Don't behave like Indian managers do." (*Id.* at PageID.259.) Wankhede considered this to be a "racist" comment "perpetuat[ing] offensive stereotypes about Indian managers." (*Id.*)

Things did not get better for Wankhede. Months later, on June 10, 2024, Goken issued him a written warning for the following infractions: (1) "retaliating against team members for providing feedback to manager;" (2) making "rude comments and threats" to team members by "yelling and threatening to ruin team member's reputation;" and (3) "raising his voice and getting animated in team meetings . . . ." (*Id.* at PageID.259, 286.) The warning came with an improvement plan, calling for Wankhede to "Be a good leader," "Listen to [his] team," and "Never intimidate, retaliate, or threaten to retaliate against team members for providing feedback to manager." (*Id.* at PageID.286.) Wankhede felt that Goken did not conduct a fair

---

[1] Kermani is also of Indian national origin. (ECF No. 10, PageID.259.)

investigation and that this warning, once again, showed his manager's "discriminatory mindset" towards him. (*Id.* at PageID.259–260.)

That day and the following day, Wankhede shared his own feedback with the company. He reported a coworker, Jorge, for being "rude and angry" (*id.* at PageID.314) and notified Human Resources about Kermani's "Indian mentality" comment from a few months before (*Id.* at PageID.259, 284, 288–291). Wankhede also asked that an HR representative be present for all meetings between him and Kermani, but Goken's CFO, Bill Nichols, denied this request and directed him to continue working under Kermani without HR oversight. (ECF No. 10, PageID.260, 295.)

Wankhede continued to see things differently than his boss. In August 2024, Kermani asked him to prepare a report on improving work processes for automotive client, Nissan, despite Wankhede expressing that no improvements were warranted at that time. (ECF No. 10, PageID.263.) Nevertheless, Wankhede created the report but believed disclosing it, without Nissan's permission, would violate the Michigan Uniform Trade Secrets Act. (*Id.*) Ultimately Wankhede shared it with Kermani via screenshare but refused to email a copy. (*Id.*)

He also alleges that Kermani "exhibited hostile and discriminatory bias" by misrepresenting his compensation, yelling when asked about overtime pay, accusing Wankhede of posting a negative Glassdoor review, and promising a performance bonus that was never given. (*Id.*)

On October 31, 2024, Wankhede reported another coworker, Beto, for "acting as my Manager and also [being] rude." (*Id.* at PageID.311 ("Beto needs improvement in his communication skill, it needs to be more polite . . . .").)

At around the same time, Wankhede was informed that "the project for which [he] had been engaged as Project Lead - Design was nearing completion" and that he and his team members were authorized to accept work on other matters. (*Id.* at PageID.262.) One week later, on November 8, 2024, Wankhede was terminated. (*Id.* at PageID.262, 264.) He says no one replaced him because the project finished. (*Id.* at PageID.262.) The other team members moved on to other matters before being laid off from Goken on May 2, 2025. (*Id.*)

Wankhede then sued Goken. His second amended complaint alleges national origin discrimination and retaliation under Title VII (Counts I and II, respectively), and wrongful termination in violation of Michigan public policy (Count III). (ECF No. 10, PageID.264–267.) Goken moves to dismiss the second amended complaint in full, alleging Wankhede failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12). The Court addresses each Count in turn.

## II.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). A national origin discrimination claim has four elements: (1) plaintiff must be a member of a protected class; (2) who suffered an adverse employment action; (3) was otherwise qualified for

the position; and (4) was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee. *Deleon v. Kalamazoo Cnty. Road Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).

The parties spend pages sparring over the applicable pleading standard. (ECF No. 12, PageID.336 ("Plaintiff has not alleged material facts supporting each element of a prima facie case."); ECF No. 13, PageID.364 ("Even if the Court finds no direct evidence, Plaintiff satisfies the *McDonnell Douglas* framework").)

Neither of them have it right. It is not necessary for a plaintiff to plead a prima facie case of discrimination to survive a motion to dismiss. *Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, at *3–4 (6th Cir. Aug. 2, 2022). The *McDonnell Douglas* burden-shifting framework "is an evidentiary standard, not a pleading standard," so Wakhende need not meet it at this stage of the case. *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1060 (6th Cir. 2022).

The proper standard is as follows: Wankhede's second amended complaint must "contain sufficient factual allegations to permit the court to reasonably infer that the discrimination that [Wankhede] alleges was because of [his] [national origin]." *See Johnson v. Bender Mgmt., LLC*, No. 25-1374, 2025 WL 2742524, at *2 (6th Cir. Sept. 26, 2025) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)); *Charlton-Perkins*, 35 F.4th at 1060–61. Contrary to Goken's suggestion (ECF No. 12, PageID.344), Wankhede is not required to "identify a similarly situated comparator that was treated differently from [him] or show that [he] was replaced by someone outside [his] protected class at the pleading stage." *Cortese v. Otsuka Am.*

6

*Pharm. Inc.*, No. 25-00531, 2026 WL 657188, at *3 (M.D. Tenn. Mar. 6, 2026) (citing *Keys*, 684 F.3d at 609).

Goken's failure to apply the correct pleading standard is reason enough to deny its motion to dismiss. *See Scott v. Regions Bank*, No. 08-296, 2010 WL 908790, at *5 (E.D. Tenn. Mar. 12, 2010) ("The Court should not address what the Defendants have not raised. Otherwise, Plaintiffs will not have received prior notice of the alleged deficiencies in their Amended Complaint."); *FCA US LLC v. Bullock*, 446 F. Supp. 3d 201, 210 (E.D. Mich. 2020) ("[I]t is not the role of the Court to craft an argument on a party's behalf."). And under the proper standard, Wankhede's second amended complaint states a plausible claim for discrimination.

The parties do not dispute that Wankhede is a member of a protected class and that his firing constitutes an adverse employment action. (ECF No. 10, PageID.265.) So the key issue is whether Wankhede alleges "facts that connect the dots between [his] termination and his [national origin]." *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 464 (6th Cir. 2015). Especially considering Wankhede's *pro se* status, the Court finds that he does.

To start, Kermani told Wankhede that his "Indian mentality" was causing poor performance at work. (ECF No. 10, PageID.259 ("Ratna, you should get rid of this Indian mentality where you think you can control the team by being rude and angry. Don't behave like Indian managers do.").) And then terminated him nine months later. (*Id.* at PageID.262, 264.) In other words, Kermani explicitly referenced Wankhede's national origin, connecting his "Indian mentality" with qualities of a bad

7

manager. This plausibly supports an inference of discrimination. *See, e.g.*, *Cortese*, 2026 WL 657188, at *3 (finding manager's comments about employee's childcare arrangements "directly implicate[d]" her sex and pregnancy status and "plausibly link[ed] the termination to [that status]."); *Myrtil v. Serra Chevrolet, LLC*, No. 22-02595, 2023 WL 6367667, at *4 (W.D. Tenn. Sept. 29, 2023) (finding manager's repeated reference to employee as "Jamaica or a Ugoslav" raised plausible claim of national origin discrimination); *cf. Meka v. Dayco Prods. LLC*, 742 F. Supp. 3d 769, 775 (E.D. Mich. 2024) (finding no reasonable inference of discrimination, in part, because manager's comment did not reference or implicate plaintiff's nationality or sex); *Masaebi v. Arby's Corp.*, 852 F. App'x 903, 909 (6th Cir. 2021) (affirming grant of motion to dismiss where plaintiff provided no basis for her belief that managers were biased against people of her national origin).

That Kermani is himself of Indian origin does not change this analysis. (ECF No. 10, PageID.259.) "Title VII can be violated by members of the same race or sex as the victim of discrimination." *Smith v. P.A.M. Transp., Inc.*, 154 F.4th 375, 385 (6th Cir. 2025); *Brack v. Shoney's, Inc.*, 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003) ("A member of a protected group may discriminate against another member of the same group in violation of Title VII.").

True, Wankhede only alleges this one comment from Kermani. This could matter when determining whether there is direct or indirect evidence of discrimination. *See Higdon v. Storz Instrument Co.*, 211 F.3d 1269 (6th Cir. 2000) ("[An] isolated and ambiguous comment . . . does not establish direct evidence of

discrimination."). But it is not necessary for Wankhede to plausibly plead discrimination at this stage of his case. *See Witte v. Rippe & Kingston Sys., Inc.*, 358 F. Supp. 2d 658, 666 (S.D. Ohio 2005) ("Plaintiff is not required to plead the elements of the direct evidence standard in order to survive a motion to dismiss.").

Plus, a comment from a supervisor demands closer scrutiny. "In assessing the relevancy of a discriminatory remark, we look first at the identity of the speaker. An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of . . . discrimination." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir.1998); *see Haydar v. Amazon Corp., LLC*, No. 16-13662, 2018 WL 4282777, at *17 (E.D. Mich. Sept. 7, 2018), *aff'd*, No. 19-2410, 2021 WL 4206279 (6th Cir. Sept. 16, 2021) ("Faricy was not just any Amazonian—he was the Vice President of Marketplace"). Kermani is not just any employee—he was Wankhede's manager, presumably *the* decision maker regarding Wankhede's tenure at Goken. So, his comment is more indicative of discrimination.

What is more, Wankhede also alleges that Jorge and Beto, two Mexican employees, had complaints against them for acting "rude and angry" (ECF No. 10, PageID.311, 314)—the same behaviors Wankhede was accused of exhibiting—but were not terminated (*id.* at PageID.262). Wankhede believes he was treated differently because management credited complaints against him without proper investigation (*id.* at PageID.262), and ultimately terminated him, despite otherwise positive feedback on his job performance (*id.* at PageID.280).

Taken together—the comment from Wankhede's direct supervisor and Wankhede's disparate treatment from like Mexican employees despite his positive job feedback—Wankhede "easily state[s] a plausible claim." *See Keys*, 684 F.3d at 610 (finding employment discrimination claim adequately plead when complaint identified key supervisors and other relevant employees by race, name, and company title, and detailed specific instances where plaintiff felt she was treated differently than white counterparts); *Cf. Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (affirming grant of motion to dismiss because plaintiff "offered no names, ages, or qualifications for the younger employees who were treated differently, or any examples of how their treatment differed").

In sum, Wankhede adequately alleges a claim of employment discrimination.

### III.

A Title VII retaliation claim requires the plaintiff to show: (1) he engaged in a protected activity under Title VII; (2) his employer was aware of that activity; (3) he suffered an adverse employment action; and (4) there was a causal connection between the adverse action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

But again, at the pleading stage, Wankhede need only provide an "adequate factual basis" for his claim. *Bar*, 2022 WL 3042844, at *5. That is, he must plausibly suggest "that he was fired in retaliation for opposing what he reasonably believed to be a discriminatory practice." *Mustafa v. Ford Motor Co.*, 691 F. Supp. 3d 796, 803

(E.D. Mich. 2023) (citing *Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 506 (6th Cir. 2002)).

Wankhede alleges that he was fired for reporting Kermani's discriminatory comment to HR and complaining about rude behavior from Jorge and Beto (Count II). (ECF No. 10, PageID.266.) Goken does not dispute that Wankhede adequately alleges that he engaged in protected activity by filing HR reports, that Goken was aware of that activity, and that Wankhede's November 2024 firing constituted an adverse employment action.[2] (ECF No. 12, PageID.348.) So the "disagreement centers over whether [Wankhede] has plausibly alleged that [his HR reporting] was causally connected to his termination." *See Mustafa*, 691 F. Supp. 3d at 803.

To demonstrate a causal connection, Wankhede must plead factual allegations "from which an inference can be drawn that [Goken] took the adverse employment action because [Wankhede] engaged in protected activity." *Cammon v. Blue Cross Blue Shield of Michigan*, No. 24-10422, 2025 WL 2201660, at *6 (E.D. Mich. Aug. 1, 2025) (citing *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 588 (6th Cir. 2022)). It can be inferred "[w]here an adverse employment action occurs very close in

---

[2] In his response brief, Wankhede states that his June 10, 2024 written warning also constitutes an adverse employment action. (ECF No. 13, PageID.367.) But he does not plead this. *See, e.g, Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541–42 (6th Cir. 2012) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).") (citation omitted). And Wankhede already had an opportunity to amend the complaint. Moreover, it appears Wankhede filed his HR report against Kermani as a response to receiving the written warning. So the written warning could not be retaliation for the later-filed HR report.

11

time after an employer learns of a protected activity." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). But the Sixth Circuit—in reviewing the pleading standard for causation in a Title VII retaliation case—explained that "[t]emporal proximity alone generally is not sufficient to establish causation," and "[e]xceptions to this rule are 'rare,' even in instances involving relatively short time periods." *Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *7 (6th Cir. Jan. 26, 2022) (citing *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020)). So on a motion to dismiss, courts consider the gap in time between the protected activity and adverse action to assess whether causation was adequately plead. *Compare Perry v. Sephora USA, Inc.*, 798 F. Supp. 3d 824, 836–37 (M.D. Tenn. 2025) (seven-month delay too distant to state ADA retaliation claim), *and Callan v. AutoZoners, LLC*, No. 21-01479, 2022 WL 204927, at *9 (N.D. Ohio Jan. 24, 2022) (six to tenth month delay too distant for FMLA retaliation claim), *and Mustafa*, 691 F. Supp. 3d at 803 (ten month delay too distant for Title VII retaliation claim), *with Lynn v. True N. Mgmt., LLC*, No. 15-2650, 2016 WL 6995290, at *6 (N.D. Ohio Nov. 30, 2016) (exercise of protected activity and firing on the same day is proximate enough to infer causation on FMLA retaliation claim). Where too much time has passed, there must be "other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525.

Since the time lapse here is significant, over five months (ECF No. 10, PageID.266), the question becomes whether Wankhede has "other evidence of retaliatory conduct to establish causality." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 650 (6th Cir. 2015); *see, e.g., Henderson v. Skyview Satellite*

*Networks, Inc.*, 474 F. Supp. 3d 893, 902 (W.D. Ky. 2020) (finding interim retaliatory actions such as removing employee's work duties support causal connection).

Wankhede's allegations in this regard are quite conclusory. Other than temporal proximity, he alleges only "the pretextual nature of the harassment allegations" without elaborating on any facts. (ECF No. 10, PageID.266.) If this pertains to Kermani yelling at him when questioned about overtime pay or accusing him of posting a negative Glassdoor review (ECF No. 10, PageID.263), these allegations occurred *before* Wankhede filed his HR reports. (*Compare id.* at PageID.284, 316–318, 320 (overtime pay discussion and Glassdoor review incidents occurred in January and February 2023, respectively), *with id.* at PageID.260, 311, 314 (HR reports filed on June 10 and October 31, 2024).) So this does not evince retaliation for filing the HR reports. He also says he was denied a 2% performance bonus (*id.* at PageID.263), but does not allege when this occurred, whether others received the bonus, or whether the requisite performance standard was satisfied. So Wankhede fails to raise a plausible causal connection between his HR reports and his firing.

## IV.

Finally, Wankhede alleges that his termination violated Michigan public policy (Count III). (ECF No. 10, PageID.266.)

Although Michigan law provides that employment is generally at will, Michigan recognizes an exception based on "the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable."

13

*Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982). One such exception is when an employee is "discharged for the failure or refusal to violate the law in the course of employment." *McNeil v. Charlevoix County*, 772 N.W.2d 18, 24 (Mich. 2009) (citing *Suchodolski*, 316 N.W.2d at 711).

Wankhede claims he was fired for refusing to send a report to Kermani that contained Nissan's confidential information. (ECF No. 10, PageID.263–264, 266.) He believes that emailing a copy—without Nissan's permission—would have violated the Michigan Uniform Trade Secrets Act (MUTSA) because Kermani could then share it outside of the company. (*Id.* at PageID.263–264.) So instead, he opted to screenshare the report with Kermani. (*Id.*)

This fails to state a plausible claim. First, Wankhede simply alleges that he "prepared a report on improving Nissan's work processes." (ECF No. 10, PageID.263.) This is insufficient to establish that the information rose to the level of a trade secret. Nor does Wankhede adequately allege why it would violate the law to share the report with his supervisor. And to the extent that MUTSA would have prohibited sharing the report externally, Wankhede concedes that he was not asked to do that. (*Id.*) And if MUTSA had prohibited sharing the report internally, Wankhede did not refuse this request; he screenshared the report with Kermani. (*Id.*) For a viable claim in this context, an employee cannot simply "protest" or disagree with an order to violate the law. He must instead have actually "refused" an order. *Miller v. Karcher N. Am., Inc.*, No. 22-10808, 2023 WL 9059518, at *4 (E.D. Mich. Dec. 5, 2023).

14

While Wankhede alleges that he refused to share the report with Kermani via email, he did not refuse to share it with Kermani via a screenshare, so his public policy claim must be dismissed.

## V.

Wankhede states a plausible claim for national origin discrimination, so the Court will DENY Goken's motion to dismiss as to Count I. But because he failed to adequately plead a Title VII retaliation claim or termination in violation of Michigan public policy, the Court will GRANT the motion to dismiss as to Counts II and III.

IT IS SO ORDERED.

Dated: March 25, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

15